JOHN RHODES
Assistant Federal Defender
Federal Defenders of Montana
Missoula Branch Office
125 Bank Street, Suite 710
Missoula, Montana 59802
Phone: (406) 721-6749
Fax: (406) 721-7751
Email: john_rhodes@fd.org

Attorney for Defendant

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **CR 19-45-M-DLC** |
| Plaintiff, | |
| vs. | **DEFENDANT'S SENTENCING MEMORANDUM** |
| TODD LOUIS PAJNICH, | |
| Defendant. | |

Please know that T.J. has many family members that love him, and are devastated at his incarceration. – Letter of Lisa Werner, mother.

TODD LOUIS PAJNICH, the above-named Defendant, by and through his counsel of record, JOHN RHODES and the FEDERAL DEFENDERS OF MONTANA, submits the following sentencing memorandum in support of his request for the mandatory minimum sentence.

The PSR calculates a Total Offense Level of 33 and a Criminal History Category of III, yielding a Guideline imprisonment range of 168-to-210 months. Because the count of conviction carries a mandatory minimum sentence of fifteen years imprisonment, the Guideline imprisonment range becomes 180-to-210 months.  U.S.S.G. § 5G1.1(c)(2).

Mr. Pajnich requests the mandatory minimum fifteen-year prison sentence, followed by five years of supervised release.

Mr. Pajnich requests that his sentence be ordered to run concurrent to his pending State of Montana revocation sentence.  PSR ¶ 40.

## PSR OBJECTIONS

Mr. Pajnich does not object to the PSR Guidelines calculations.

## ARGUMENT

**A.    The mandatory minimum sentence fulfills the 18 U.S.C. § 3553(a) requirements.**

Fifteen years in prison, followed by five years supervised release, is the sufficient but not greater than necessary sentence.

**B.    As a registered sex offender, Mr. Pajnich will face special challenges.**

Mr. Pajnich is required to register as a sex offender with the State of Montana, which requires additional restrictions of liberty above and beyond those levied against all felons.

It is undeniable that life as a registered sex offender (a registration that makes no distinction, beyond length of registration, between Mr. Pajnich, whose criminal acts were on a computer, and those who created illegal images or those who actually molest children or commit a hands-on sex offense) is measurably more compromised than life after a conviction for any other type of offense.  *See*, *e.g.*, "Public Place Laws Tighten Reigns on Sex Offenders," The New York Times, May 29, 2012 (detailing increasing local laws prohibiting sex offenders from public places such as parks).

> Many on registries have caused indescribable pain to their victims, scrambling lives into giant knots that can take a lifetime to untie. But as the number and severity of rules for convicted sex offenders has grown, so has the chorus of academics, lawyers, and advocates arguing that registries do little to prevent sex crimes. Instead, the stigma of being publicly branded a sex offender, they say, can result in job and housing discrimination, denying registrants the stability and support networks vital in preventing recidivism.

Serena Solomon, "When a Sex Offender Calls, She's There to Listen," available at https://www.vox.com/the-highlight/2019/12/31/21031854/sex-offender-registries-abolish-women-against-registry (last updated January 8, 2020).

In reviewing for an Ex Post Facto violation, the Sixth Circuit considered the reach of Michigan's sex offender registry laws.  Despite the State of Michigan's protestations that registration was a civil remedy and not a criminal punishment, the Sixth Circuit found the state's registry met the five factor test laid out by the Supreme Court in *Smith v. Doe*, 538 U.S. 84, 97 (2003), and thus imposed punishment and

was subject to ex post facto considerations. *Does #1-5 v. Snyder*, 834 F.3d 696, 701

(6th Cir. 2016) (quoting *Smith*).  The court found registration "brands registrants as

moral lepers solely on the basis of a prior conviction.  It consigns them to years, if

not a lifetime, of existence on the margins, not only of society, but often, as the

record in this case makes painfully evident, from their own families. . . .".  *Does #1-*

*5*, 834 F.3d at 705.

The United States District Court for the District of Colorado went even further

– it declared that Colorado's sex offender registry violated the Eighth Amendment

prohibition against cruel and unusual punishment and the Due Process Clause of the

Fourteenth Amendment.  *Millard v. Rankin*, 265 F.Supp.3d. 1211, 1235 (D. Colo.

2017) (appeal filed). The court found that the registry's "publication of []

information. . . . expose[s] the registrants to punishments inflicted not by the state

but by their fellow citizens."  *Id*. at 1226.  The court heard testimony from

plaintiffs/registrants and witnesses which detailed the day-to-day difficulties of

registrants: harassment and public shaming by news media, *id*. at 1218, employers,

*id*., housing agencies, *id*., local law enforcement, *id*. at 1219, local school officials,

*id*. at 1220, and even the local archdiocese, *id*. at 1227, as well as property damage,

*id*. at 1219.

> This ongoing imposition of a known and uncontrollable risk of public
> abuse of information from the sex offender registry, in the absence of
> any link to an objective risk to the public posed by each individual sex
> offender, has resulted in and continues to threaten Plaintiffs with

punishment disproportionate to the offenses they committed. Where the nature of such punishment is by its nature uncertain and unpredictable, the state cannot assure that it will ever be proportionate to the offense. SORA as applied to these Plaintiffs therefore violates the Eighth Amendment.

*Id*. at 1232.

Importantly, the Montana and Colorado sex offender registries operate under very similar statutes and regulations; in some respects, Montana's requirements are more stringent. For example, Montana requires a registrant's fingerprint, photograph, and DNA sample, Mont. Code Ann. § 46-23-504, and publishes the registrant's name, address, photograph, date of birth, physical description, license plate number and description of licensed vehicle, type of victim targeted by the offender, and conditions of release, depending on the registrant's "level." Mont. Code Ann. § 46-23-508. Colorado publishes only the name, address, photograph, and physical description of registrants, and only publishes that information regarding registrants with two or more prior sex offense convictions, a conviction as a "sexually violent predator," or a registrant who previously failed to register. C.R.S. § 16-22-111(1)

The court in Colorado found that it was the dissemination of this information that ultimately led to "punishments inflicted not by the state but by their fellow citizens," *Millard* at 1226, and the State of Montana requires the dissemination of

more detailed information for a broader group of offenders.  Mont. Code Ann. § 46-23-508.

During the registration reporting period, Mr. Pajnich will be required to register as a sex offender with the State of Montana.  Public disclosure of Mr. Pajnich's core information includes his name, address, employment information and address, address of any school should he choose to continue his education, a physical description, the offense of conviction, and his current photograph.  Mont. Code Ann. § 46-23-508.  Mr. Pajnich will be required to update this information regularly and will be required to register in other jurisdictions to which he may travel for more than 7 days.  Mont. Code Ann. § 46-23-505.

Mr. Pajnich's information will be accessible by internet to anyone in the world.   Mont. Code Ann. § 46-23-508(3).   This information will also be disseminated to local organizations in accordance with jurisdictional regulations.  These consequences are themselves a punishment of enormous dimension with severe criminal consequences for non-compliance.

Despite these incredible strictures, sex offender registration may not be necessary to prevent recidivism.  *Does #1-5*, 834 F.3d at 704 (citing Lawrence A. Greenfield, "Recidivism of Sex Offenders Released from Prison in 1994," (2003) (which found that sex offenders had lower rates of recidivism than non-sex offenders)); *see also* Michelle Ye Hee Lee, *Justice Alito's Misleading Claim About*

*Sex Offender Rearrests*, Washington Post (June 21, 2017) (available at https://www.washingtonpost.com/news/factchecker/wp/2017/06/21/justicealitosmisleading-claim-about-sex-offender-rearrests/?utm_term=.60f49d83362f).   And to the extent registration is warranted in order to ensure low rates of recidivism, it may not be doing its job.  *Does #1-5*, 834 F.3d at 704 (citing  J.J. Prescott & Jonah E. Rockoff, "Do Sex Offender Registration and Notification Laws Affect Criminal Behavior?," 54 J.L. & Econ. 161 (2011)).

**C.    The need for adequate deterrence, 18 U.S.C. § 3553(a)(2)(B).**

> He is an outstanding, courageous, loving child of God, and my heart is with him as we ask for grace and mercy in your consideration of my nephew's future. – Letter of John Werner, uncle.

Empirical research which has found that lengthy sentences do not deter; rather the certainty of some punishment is what deters:

> Criminological research over several decades and in various nations generally concludes that enhancing the certainty of punishment produces a stronger deterrent effect than increasing the severity of punishment.

Valerie Wright, Ph.D., *Deterrence in Criminal Justice:  Evaluating Certainty vs. Severity of Punishment* (November 2010) (footnotes omitted).[1]

That empirical evidence is unanimous:  there is no relationship between sentence length and general or specific deterrence, regardless of the type of crime.

---

[1] available at www.sentencingproject.org/doc/Deterrence%20Briefing%20.pdf

*See* Andrew von Hirsch *et al.*, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999) (concluding that "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects"); Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice:  A Review of Research 28-29 (2006) ("[I]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels, all  appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence."); David Weisburd *et al.*, *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes*, 33 Criminology 587 (1995) (finding no difference in deterrence for white collar offenders between probation and imprisonment); Donald P. Green & Daniel Winik, *Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders*, 48 Criminology 357 (2010) (study of over a thousand offenders whose sentences varied substantially in prison time and probation found that such variations "have no detectable effect on rates of re-arrest," and that "[t]hose assigned by chance to receive prison time and their counterparts who received no prison time were re-arrested at similar rates over a four-year time frame").

The Sentencing Commission concludes that "[t]here is no correlation between recidivism and guidelines' offense level. . . . While surprising at first glance, this finding should be expected.  The guidelines' offense level is not intended or designed to predict recidivism."  U.S.S.G., *Measuring Recidivism:  The Criminal History Computation of the Federal Sentencing Guidelines*, at 15 (2004).  And according to "the best available evidence, . . . prisons do not reduce recidivism more than noncustodial sanctions."  Francis T. Cullen *et al., Prisons Do Not Reduce Recidivism:  The High Cost of Ignoring Science*, 91 Prison J. 48S, 50S-51S (2011).

It is the certainty of punishment, not a harsh federal sentence, that is needed to deter Mr. Pajnich.  The mandatory minimum sentence accomplishes that certainty.

## D.     The history and characteristics of Mr. Pajnich.

> I pray for Todd daily.  He is a sweet soul that has fallen into darkness and given way to his despair.  I want only for him to see the gem in himself that others see when he's sober. – Letter of Jolie Clark, friend.

Mr. Pajnich is thirty years old, with a minimal criminal history consisting of DUIs and traffic offenses, PSR ¶¶ 37-39, a conviction for simple possession, PSR ¶ 40, and an apparent shoplifting incident.  PSR ¶ 36.  These one-point convictions, as well as his probationary status at the time of the instant arrest, push him into Criminal History Category III.  While correctly calculated, Mr. Pajnich's Criminal History Category does not accurately reflect his minimal criminal history.

Mr. Pajnich had a difficult upbringing.  PSR ¶¶ 47, 49, 59.  Many of Mr.

Pajnich's mental health problems, substance abuse problems, and medical issues are

ultimately attributable to the abuse he was subjected to growing up.  *Id*. *See also*

letter of John Werner. Despite these difficulties, Mr. Pajnich has been consistently

employed since 2011. PSR ¶¶ 69-74.  Although Mr. Pajnich dropped out of high

school, he has already obtained his GED.  PSR ¶ 68.  Mr. Pajnich is open to mental

health treatment, substance abuse treatment, and further educational development

while in BOP custody.  PSR ¶ 65, 68.

## CONCLUSION

Mr. Pajnich requests the mandatory minimum sentence, ordered to run

concurrent to his pending State of Montana revocation sentence.

RESPECTFULLY SUBMITTED this 18th day of March, 2020.

TODD LOUIS PAJNICH

/s/ John Rhodes
JOHN RHODES
Assistant Federal Defender
Federal Defenders of Montana
Counsel for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2020 a copy of the foregoing document was

served on the following persons by the following means:

| | |
|---|---|
| __1, 2__ | CM-ECF |
| _____ | Hand Delivery |
| __4__ | Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| __3__ | E-Mail |

1.    CLERK, UNITED STATES DISTRICT COURT

2.    CYNDEE L. PETERSON
      Assistant U.S. Attorney
            Counsel for the United States of America

3.    BRIAN HOGAN
      United States Probation Office

4.    TODD LOUIS PAJNICH
            Defendant

                                    By:    /s/ John Rhodes
                                           JOHN RHODES
                                           Assistant Federal Defender
                                           Federal Defenders of Montana
                                           SARAH LOCKWOOD
                                                 Counsel for Defendant